**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUL 29 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 18-30153 |
| Plaintiff-Appellee, | D.C. No. 3:15-cr-05198-RBL-1 |
| v. | |
| TROY X. KELLEY, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Submitted July 9, 2020[**]
Seattle, Washington

Before: FERNANDEZ and NGUYEN, Circuit Judges, and BOLTON,[***] District
Judge.
Concurrence by Judge FERNANDEZ

After his first trial resulted in a jury deadlocked on all but one count, a

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Susan R. Bolton, United States District Judge for the
District of Arizona, sitting by designation.

second jury convicted Defendant-Appellant Troy X. Kelley (Mr. Kelley) of several counts related to a mortgage fraud scheme perpetuated from 2005 to 2008, during which Mr. Kelley retained approximately $2.9 million in fees earmarked for borrowers. Mr. Kelley seeks reversal of his convictions for one count of possession of stolen property under 18 U.S.C. § 2315 (Count 1); two counts of false declarations under 18 U.S.C. § 1623(a) (Counts 2 and 5); and five counts of filing false tax returns under 26 U.S.C. § 7206(1) (Counts 12–15 and 17). We have jurisdiction under 28 U.S.C. § 1291, and affirm.

1. Mr. Kelley first argues that insufficient evidence supports his stolen property conviction. We review a legal sufficiency challenge de novo. *United States v. Phillips*, 929 F.3d 1120, 1123 (9th Cir. 2019). Evidence is legally sufficient to support a guilty verdict "if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Carranza*, 289 F.3d 634, 641–42 (9th Cir. 2002) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Even assuming, as Mr. Kelley argues, that the United States was required to prove that somebody besides Mr. Kelley owned the unused reconveyance fees, the United States provided sufficient evidence that the borrowers owned the fees. The contracts between the title companies and Mr. Kelley's company required the title

2                                                                                          18-30153

companies to remit the total reconveyance fee to Mr. Kelley, to be divided three ways: (1) $15.00 or $20.00 to Mr. Kelley as payment for his services; (2) $85.00 to $125.00 as an "advance" to cover expenses such as trustee fees and recording fees required to complete the reconveyance; and (3) the remainder to be "forward[ed]" by Mr. Kelley to the customer. The United States introduced expert testimony that Mr. Kelley was contractually entitled to a flat fee of $15.00 or $20.00 per transaction, and that these contractual provisions were never modified. Finally, the United States introduced evidence that Mr. Kelley knew the unused fees belonged to the borrowers, including (1) emails between Mr. Kelley and the title companies; (2) a sample letter drafted by Mr. Kelley and addressed to borrowers, promising to "refund[] . . . the excess processing fee"; (3) and a doctored spreadsheet prepared at the request of Mr. Kelley concealing the unpaid refunds. This evidence is sufficient to convict under 18 U.S.C. § 2315.

2. Mr. Kelley next argues that the trial court coerced the jury into reaching a verdict after it reported a deadlock. Whether the district court impermissibly coerced the jury to return a verdict is reviewed de novo. *United States v. Williams*, 547 F.3d 1187, 1202 n.14 (9th Cir. 2008). "In determining whether to declare a mistrial because of jury deadlock, relevant factors for the district court to consider include the jury's collective opinion that it cannot agree, the length of the trial and complexity of the issues, the length of time the jury has deliberated, whether the

defendant has objected to a mistrial, and the effects of exhaustion or coercion on the jury." *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1029 (9th Cir. 2000) (citing *United States v. Cawley*, 630 F.2d 1345, 1348–49 (9th Cir. 1980)).

The first two jury notes did not indicate a deadlock. After submitting the third note, the jury foreperson informed the court, "I think we are permanently deadlocked." At that point, the court did exactly what it was supposed to do: it "question[ed] the jury to determine independently whether further deliberations might overcome the deadlock." *See Hernandez-Guardado*, 228 F.3d at 1029. In response to the court's questioning, several jurors who disagreed with the foreperson's statement indicated they believed there were "opportunities that [we] think we need to discuss more." The court sent the jurors back to the jury room with instructions to discuss "whether there is the possibility that votes can be changed," and if not, to return the verdict form "as it stands," and to "not come to a decision simply because other jurors think it is right." The court's instructions did not, as Mr. Kelley suggests, "blast a verdict out of the deadlocked jury." A mistrial is unwarranted on this basis.

3. Mr. Kelley next argues that the district court erred by denying his motion for acquittal and urges us to vacate his convictions because he was placed in jeopardy for a second time when he was retried on Counts 11–15 and 17 after the first jury in acquitted on Count 16. Count 16 charged Mr. Kelley with falsely

18-30153

stating that one of his companies earned $245,000 in income for reconveyance work performed in 2011 and 2012. The district court correctly denied Mr. Kelley's motion on the basis that at trial, Mr. Kelley argued both that the statement was not true *and* that the statement was never made. Since the jury's verdict could have been based on either theory, the court had no way of knowing whether the jury believed the statement false. Because the first jury did not necessarily find Mr. Kelley's statement truthful, and because ample evidence could support a finding that Mr. Kelley never made that statement at all, retrying Mr. Kelley on the remaining charges—whether they were predicated on the truthfulness of that statement or not—did not violate double jeopardy principles.

4. Mr. Kelley lastly argues that the district court erred by denying his motion to sever the false statement and tax counts from the stolen property count. The district court's denial of a motion to sever is reviewed for abuse of discretion. *United States v. Sutton*, 794 F.2d 1415, 1427 (9th Cir. 1986). "Misjoinder of charges is a question of law reviewed de novo." *United States v. Whitworth*, 856 F.2d 1268, 1277 (9th Cir. 1988).

Mr. Kelley argues that the government's "allegation of stolen property" was "baseless" and that "[w]ithout a valid allegation of stolen property, the remaining false declaration and tax counts against Mr. Kelley had no unifying theory to support their joinder." But the allegation of stolen property was not baseless: as

18-30153

detailed above, it was supported by sufficient evidence. Because the allegation of stolen property was valid, and the remaining counts were related to the stolen property count, the district court did not err by refusing to sever the charges.

**AFFIRMED.**

18-30153

*U.S. v. Kelley*, No. 18-30153

FERNANDEZ, Circuit Judge concurring:

I concur in the result.